IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| JAMIL RIVERA | : | |
| | : | Case No. 19-01894 (GAG) |
| Plaintiff, | : | |
| | : | Re: |
| v. | : | |
| | : | Unjust Enrichment |
| MARRIOTT INTERNATIONAL, INC. and | : | |
| INTERNATIONAL HOSPITALITY | : | |
| ENTERPRISES, INC. | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MARRIOTT INTERNATIONAL, INC.'S
## MOTION TO DISMISS AMENDED COMPLAINT

TO THE HONORABLE COURT:

COMES NOW defendant Marriott International, Inc. ("Marriott"), through the undersigned counsel, and very respectfully submits this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. In support of this motion, Marriott argues as follows:

### I.   PRELIMINARY STATEMENT

Plaintiff Jamil Rivera ("Plaintiff") filed this purported class action, grounded on diversity, alleging two causes of action arising out of alleged wrongs suffered by consumers who reserved hotel accommodations at the Courtyard Isla Verde Beach Resort ("Courtyard") through the hotel's webpage and other third-party websites: (1) unjust enrichment and (2) fraud (dolo) in the formation of the contract. His claims are fatally flawed for several reasons.

In sum, Plaintiff alleges that Marriott and its co-defendant International Hospitality Management, Inc. ("IHM") (jointly "Defendants") are unjustly enriched by charging a mandatory percentage-based resort fee to guests of the Courtyard, based on occupancy rate per

night as opposed to an "actual per-guest cost of the amenities, plus some profit." Docket 31 ("Compl.") ¶¶ 30-33. Plaintiff further alleges that the terms and conditions governing the resort fees, including the services and amenities covered by the same, are intentionally concealed by Defendants in order to defraud him and the class members. *Id.*, ¶ 52.

Plaintiff's unjust enrichment claim fails on two accounts. First, Plaintiff stayed at the Courtyard pursuant to voluntarily agreed contract terms with the Courtyard that conspicuously and validly disclosed the resort fee of which he now complains. Second, Plaintiff's factual allegations fail to plead two necessary elements of the unjust enrichment claim: (i) a "correlative loss" or an "impoverishment" suffered as a result of the purported enrichment and (ii) the lack of cause for the alleged enrichment. This is unsurprising because Plaintiff's contract to stay at the Courtyard is legal justification for the resort fee. Thus, Plaintiff's unjust enrichment claim must be dismissed.

Plaintiff's fraud (dolo) in the formation claim also fails on the merits given that the amount of the resort fee, what services and amenities are covered by the fee, and the terms and conditions thereof are plainly disclosed in all websites through which a room can be booked at the Courtyard and *which Plaintiff himself cites in the complaint*. In short, there were no insidious machinations, false representations or omissions on the part of Marriott, which is the threshold element Plaintiff must meet in order to bring a dolo claim. Nor did Plaintiff suffer any damages by relying on the truthful disclosure that he would be charged a resort fee in addition to taxes and his room rate. Indeed, Plaintiff's dolo claim does not even meet the heightened pleading standard of Rule 9(b) applicable to dolo claims involving fraud. Accordingly, the Amended Complaint should be dismissed with prejudice in its entirety.

## II.   STATEMENT OF OPERATIVE FACTS[1]

Marriott is a Delaware corporation, headquartered in Bethesda, Maryland. Compl. ¶ 3. Marriott owns, manages and franchises hotels across the United States. *Id.* One of those alleged properties is the Courtyard in Isla Verde, which is operated by IHM. *Id.*, ¶¶ 4, 6.[2] A resort fee is a per-room, per-night mandatory fee that a hotel or resort charges its guests in addition to the base room rate. *Id.*, ¶ 13. "[H]otels and resorts have long charged guests for specific amenities such as parking, internet access, and the use of pools or health clubs." *Id.*, ¶ 14.

The Courtyard, like many other hotels and resorts, charges resort fees. Plaintiff's complaint is based on how the fee is charged. In particular, Plaintiff complains that guests are charged "either eighteen percent (18%) of the room rate or, if the guest is using loyalty points, $25 per day" whether they "book their stay directly through Defendants or online through third-party companies such as Priceline, Expedia, or Booking.com." *Id.*, ¶¶ 20-21.

Plaintiff fails to allege through which website he booked his stay at the Courtyard. However, the fact that a resort fee will be added to the room rate—including what services and amenities are covered by the fee—is disclosed, prior to booking, in the websites through which a room can be booked at the Courtyard. For instance, Defendants' website advises: "'Please note—Mandatory resort fee 18 percent will be added to rate. Guest using Marriott Bonvoy points will be billed US 25 per day.'" *Id.*, ¶ 22 (and image pasted therein). A customer booking a room through Marriott.com can access the Rate Details, which further disclose that the resort fee includes the following:

---

[1] The operative facts are derived from the well-pleaded facts of the complaint, which are accepted as true exclusively for purposes of this motion.

[2] This is accepted exclusively for purposes of this motion since Marriott does not own or operate the Courtyard.

## Rate Details

**Redemption**

### Additional Information

For detailed information regarding property category level and
other Redemption information please visit the property online
at www.marriott.com.

Mandatory 25USD daily resort fee covers the following services:

* Local calls in the metropolitan area

* Access to 800 numbers

* Phone card access

* fax and black/white photocopies

* Beach chairs and umbrellas

* 24 hours business center usage

* Two welcome drinks per room

* Body boards and sports balls in beach area

* bottle of water in room (Max 2 per day)

* US10.00 Casino match bet coupon

* Two hour bike rental

*See* Exhibit 1-B hereto.[3] Defendants' website also has hyperlinks at the bottom of the webpage

wherein customers can access the detailed "Terms of Use" and Marriott's Bonvoy loyalty

"Program Terms & Conditions," among other disclosures. *See* Exhibit 1-A and 1-B.[4]

---

[3] "Although the standard of review under Fed. R. Civ. Pro. 12(b)(6) is generally limited to the facts stated on the face of the complaint, a court may also consider documents appended to the complaint, documents incorporated by reference, and matters of which judicial notice can be taken." *Martinez v. Puerto Rico*, 594 F. Supp. 2d 181, 185 (D.P.R. 2009) (citations omitted). Inasmuch as Plaintiff included as part of his complaint screenshots of the various websites in which a customer may book a reservation at the Courtyard, the Court may consider printouts of those websites, including the portions thereof the Plaintiff conveniently chose to omit from the complaint. *See Ford v. Hotwire, Inc.*, 2007 WL 6235779, *1 (S.D. Cal. 2007) (considering on Motion to Dismiss under 12(b)(6) Hotwire's Terms of Use and the disclosures and statements made throughout the process of reserving hotel accommodations through Hotwire's website when the Plaintiff only quoted excerpts thereof in the complaint). *See also Barnes v. Marriott Hotel Services, Inc.*, 2017 WL 635474, *4 (N.D. Cal. 2017) (taking judicial notice of several pages of the Marriott website describing the accessibility features of the Hotel and of specific accessible room types, holding that: "It is not uncommon for courts to take judicial notice of factual information found on the world wide web."); *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (permitting courts to take judicial notice of facts on government websites that are not reasonably in dispute).

[4] The hyperlinks are also active and, thus, the terms and conditions are also accessible via the PDF printouts of all websites included as Exhibits hereto.

Likewise, customers booking a room through Expedia.com are apprised, prior to completing their reservation, of the fact that a resort fee will be charged upon deciding to stay at the hotel. In particular, when quoting the price for any selected room, the sum that will be charged as a resort fee appears in Expedia's website as a separate line item between the taxes and the total that will be charged if the customer accepts the transaction. Compl. ¶¶ 23-24 (and image). The line item disclosing the resort fee appears in bold letters and states that it is "Due at hotel." *Id.* (pasted image). According to the complaint, when booking through Expedia, "guests are charged a 19% resort fee" based on the quoted room-rate. *Id.*, ¶ 23. In addition to disclosing the amount and percentage that will be charged as resort fee, Expedia's webpage informs that the resort fee includes:



*See* Exhibit 2. Immediately before the link the customer must click on to "Complete Booking," Expedia advises that "[b]y selecting complete this booking" the customer acknowledges that he/she has read and accepted the Rules & Restrictions, Terms of Use, Privacy Policy, and

Government Travel Advice. *Id*. Expedia's Rules & Restrictions, Terms of Use, Privacy Policy, and Government Travel Advice are all available to the customer via hyperlink. *Id*. at 5.

Similarly, a customer who books a room through Booking.com is apprised, prior to completing the reservation, of the fact that a resort fee will be charged upon choosing to stay at the hotel. In particular, when providing a quote for any selected room, the sum that will be charged as a resort fee appears in Booking.com's website as a separate line item (specifying that it is an 18% resort fee) between the quoted line items for tax and the total price that will be charged if the customer accepts the transaction. Compl. ¶ 25 (and pasted image). The complaint alleges that, when booking through Booking.com, "guests pay an 18% resort fee" based on the quoted room-rate. *Id*. In addition to disclosing the amount that will be charged as resort fee, Booking.com's webpage informs the customer that the resort fee includes:

**The fine print**

The resort fee includes:

• WiFi in the public areas included pool and beach
• Welcome Signature drink
• Casino match bet coupon USD 10.00
• Beach chairs
• Beach umbrellas
• Body boards
• Business center usage
• Local phone calls
• Access to 800 numbers
• Fax services
• Phone card call access
• Bike rental

Guests are required to show a photo ID and credit card upon check-in. Please note that all Special Requests are subject to availability and additional charges may apply.

*See* Exhibit 3. At the bottom right corner of the webpage, Booking.com includes the following question: *What are my booking conditions?* Said question contains a hyperlink that allows customers to access the booking conditions should they wish to read the same. *Id.*[5]

In the same vein, a customer who books a room through Priceline.com is apprised before completing the reservation of the fact that a resort fee will be charged upon opting to stay at the hotel. Like Expedia and Booking.com, Priceline's website conspicuously discloses—as a separate line item between the taxes and the total sum to be charged—that a resort fee will be added to the room price if the customer accepts the transaction. Compl. ¶ 26 (and pasted image). According to the complaint, when booking through Priceline, "guests pay an 18% resort fee" based on the quoted room rate. *Id.* In the case of Priceline, the site places an asterisk (*) beside the disclosed quote for the resort fee, which explains that said fee will be "Collected at the property." *Id.* After requiring the customer's credit card information, Priceline advises the customer that "[b]y clicking 'Confirm Your Reservation' [the customer] agree[s] to the Booking Conditions, Terms and Conditions, and Privacy Policy," all of which are easily accessible via hyperlink. *See* Exhibit 4-A. When the customer clicks on the link for "Booking Conditions"— which can be done before confirming the reservation—a pop-up window appears, disclosing, *inter alia*, the following information concerning what the resort fee includes:

> ◦ **Important Information From The Hotel:** Guests are required to show a photo identification and credit card upon check-in. Please note that all Special Requests are subject to availability and additional charges may apply. The resort fee includes: • WiFi in the public areas included pool and beach • Welcome Signature drink • Casino match bet coupon USD 10.00 • Beach chairs • Beach umbrellas • Body boards • Business centre usage • Local phone calls • Access to 800 numbers • Fax services • Phone card call access • Bike rental

*See* Exhibit 4-B.

---

[5] The final step in Booking.com's reservation process takes the customer to a page requiring the credit card information and wherein the customer is advised that "by completing this booking you agree to the booking conditions, general terms, and privacy policy," all of which are hyperlinked. Exhibit 3 shows the information provided and required from the customer before the final step.

Plaintiff stayed at the Courtyard in January 2016, wherein he was charged and paid resort fees calculated as a percentage of the room rate. Compl. ¶ 2. Specifically, "[o]n January 11 and 12, 2016, Plaintiff was charged a room rate of $125.00 and a resort fee of $22.50 (18% of the room rate)." *Id.*, ¶ 28. Over three and a half years after staying at the Courtyard, Plaintiff filed the captioned complaint alleging that the Defendants were unjustly enriched by the manner in which the resort fee is charged. Docket 1. After IHM moved to dismiss (Docket 9), Plaintiff amended the complaint to add an alleged dolo claim.

### III.  ARGUMENT

**A.**    **Plaintiff's Unjust Enrichment Claim Fails.**

   *1.  The Contractual Relationship Between the Plaintiff and the Courtyard Forecloses Unjust Enrichment as a Remedy.[6]*

A contract is formed under Puerto Rico law when there is: (1) consent, (2) an object that is the subject of the contract, and (3) the cause for the obligation that is being established.  P.R. Laws. Ann. Tit. 31, § 3391. *See also, e.g.*, *Vitalife, Inc. v. Omniguide, Inc.*, 350 F. Supp. 3d 32, 34 (D.P.R. 2018). "[A]cceptance of an offer is ... the normal procedure to perfect a contract." *Rivera-Colón v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 209 (1st Cir. 2019) (citing *Producciones Tommy Muñiz Inc. v. Comité Organizador de Los VIII Panamericanos (COPAN)*, 113 D.P.R. 517, 13 P.R. Offic. Trans. 664, 670 (1982)). There is no need for a formal signed agreement. "In Puerto Rico, an agreement can be binding without executed documentation if,

---

[6] Given that the complaint fails to specify through which of the websites Plaintiff booked his reservation and inasmuch as Plaintiff is invoking Puerto Rico law (Docket 32 at ¶ 53), this motion is argued solely under Puerto Rico law. However, the terms of use of the Websites have different choice-of-law provisions, class action waivers, and three of the four have mandatory arbitration clauses. If the complaint is not dismissed based on this motion, Marriott reserves, and thus does not waive, the right to move to compel bilateral arbitration under the applicable terms and conditions.

*inter alia*, the parties have a 'meeting of the minds expressed through the offer and the acceptance.'" *TC Investments Corp. v. Becker*, 733 F. Supp. 2d 266, 279 (D.P.R. 2010).

There is no question here that a valid and enforceable contract was finalized between the Plaintiff and the Courtyard when the former completed his reservation to stay at the hotel, regardless of whether it was made through the Defendants' website[7] or through third-party websites, such as Expedia, Booking.com, or Priceline (collectively, the "Websites"). The object of the contract was the stay at the hotel, with the Plaintiff having the option of enjoying the hotel's various amenities, while the cause of the obligation was his agreement to pay the quoted price for staying at the hotel. Plaintiff ***expressly provided his consent*** when he clicked on the link to complete his reservation, thereby accepting the offer—that is, to stay at the hotel agree to pay all charges (*i.e.*, costs, taxes, and fees, ***including the resort fee***) quoted in the website though which he completed his reservation.[8] Indeed, the very fact that Plaintiff has alleged fraud in the formation of a contract as a cause of action is in and of itself an admission that a contract between Plaintiff and the Courtyard was perfected.

"[I]t is well-settled under Puerto Rico law that the unjust enrichment doctrine is not applicable where, as here, there is a legal precept (e.g., a binding agreement) that excludes the application of such doctrine." *Puerto Rico Tel. Co. v. SprintCom, Inc.*, 662 F.3d 74, 97 (1st Cir. 2011) (citing *Hatton v. Municipality of Ponce*, 1994 P.R.-Eng. 909, 605, 134 P.R. Dec. 1001, 1010 (1994)). *See also Montalvo v. LT's Benjamin Records, Inc.*, 56 F.Supp.3d 121, 137 (D.P.R. 2014) (Gelpí, U.S. Dist. Judge) (dismissing unjust enrichment claim due to the existence of a contract); *Stewart v. Husqvarna Const. Products North America, Inc.*, 2012 WL 1590284, at *7-

---

[7] https://www.marriott.com/hotels/travel/sjuiv-courtyard-isla-verde-beach-resort/.

[8] Expedia and Priceline's websites expressly advised the customer that by clicking "Complete Booking" or "Complete Your Reservation," he/she was accepting all Rules & Restrictions, Terms & Conditions, and other applicable conditions. Booking.com does the same once the customer reaches the final step of the booking process.

8 (D.P.R. 2012) (same); *Westernbank Puerto Rico v. Kachkar*, 2010 WL 1416521, at *29 (D.P.R. 2010) ("Unjust enrichment doctrine does not apply where there exists a legal provision that excludes its application, such as the existence of a contract that expresses the intentions of the parties.") (citing *Ortiz Andújar v. E.L.A.*, 122 P.R. Dec. 817, 22 P.R. Offic. Trans. 774, 780 (1988) and *Garriga, Hijo, Inc. v. Cond. Marbella*, 143 P.R. Dec. 927, 934 (1997) ("between [the parties] there exists a contract; the doctrine of unjust enrichment does not apply") (court's translation)).

Here, Plaintiff stayed at the Courtyard pursuant to a valid contract. Pursuant to that contract, the hotel agreed to honor Plaintiff's reservation and allow him to stay at the hotel in exchange for him paying the agreed-upon costs, including the resort fee. Given the existence of that contract and that the doctrine is only available in the absence thereof, Plaintiff's unjust enrichment claim must be dismissed.

Dismissal is mandatory not only under Puerto Rico law. Federal courts have consistently dismissed class action claims for unjust enrichment grounded on the alleged unfairness of the imposition of resort fees in cases, such as this one, where a contract exists between the plaintiff and the hotel and/or when the plaintiff has other remedy at law.

For instance, in *Soule v. Hilton Worldwide, Inc.*, 1 F.Supp.3d 1084 (D. Haw. 2014), the plaintiff filed suit on behalf of a putative class alleging, *inter alia*, unfair or deceptive trade practices under Hawaii law and unjust enrichment. In *Soule*, the court granted dismissal of the plaintiff's unjust enrichment claim against Hilton for the charging of resort fees because the plaintiff had an adequate remedy at law premised on a contractual relationship. *Id*. ("Since … an express contract or agreement exists between the parties, [plaintiff] is precluded from asserting an unjust enrichment claim"). *See also Wilson v. Stratosphere Corp*., 371 Fed. Appx. 810, 811-

812 (9th Cir. 2010) (dismissing putative class action and unjust enrichment claim based on the existence of a contract); *Zyda v. Four Seasons Hotels and Resorts*, 2019 WL 2583479, at *6 (D. HI. 2019) (dismissing unjust enrichment claim challenging imposition of resort fees based on the existence of a contract); *Ford v. Hotwire, Inc.*, 2008 WL 5874305, at *6 (S.D. Cal. 2008) (dismissing putative class action, holding that, inasmuch as the resort fees were clearly disclosed prior to booking, there was: (1) no violation of California's Unfair Competition Law; (2) no violation of California's False Advertising Law; (3) no violation of California's Consumer Legal Remedies Act; and (4) that "Plaintiff fails to set forth a cause of action for unjust enrichment."). Based on the foregoing, it is clear that dismissal is warranted.

In sum, Plaintiff accepted the clearly disclosed resort fee when booking his stay at the Courtyard and got the deal he bargained for when he showed up for his reservation and stayed at the hotel. Plaintiff could have chosen to stay at any other hotel that does not charge resort fees, but he affirmatively chose to stay at the Courtyard and to pay all charges quoted in the website through which he completed his reservation, including the resort fee. As such, and given the existence of a contract between Plaintiff and the hotel, his unjust enrichment cannot survive.

2. *Plaintiff's Allegations Cannot State a Cognizable Claim for Unjust Enrichment.*

Unjust enrichment includes five elements: (1) an enrichment, (2) a correlative loss or an impoverishment, (3) a nexus or relation between the enrichment and the impoverishment/loss, (4) lack of cause for enrichment or the absence of justification and (5) the absence of a legal precept or remedy provided by law. *P.R. Tel. Co. v. Sprintcom, Inc.*, 662 F.3d 74, 97 (1st Cir. 2011); *Stewart v. Husqvarna Constr. Prods. N. Am.*, 2012 WL 1590284, at *7 (D.P.R. May 4, 2012). Failure to plead an essential element warrants dismissal of the claim. *See Wiley v. Stipes*, 595 F. Supp. 2d 179, 188 (D.P.R. 2009). In this case, Plaintiff has failed to plead the second and

fourth essential elements of an unjust enrichment claim. Indeed, the allegations of the Complaint establish that Plaintiff does not even meet the second element of having suffered a correlative loss or an impoverishment.

Plaintiff complains about the fact that the Courtyard charges its guests a percentage-based resort fee. In particular, he alleges that "Defendants charge resort fees as a percentage of the room rate, despite the fact that the per-guest cost of providing the amenities does not vary." Compl., ¶ 31. According to Plaintiff, "[t]he per-guest cost of providing these amenities is fixed, assuming a constant occupancy rate [which] is illustrated by the fact that Defendants charge a flat-rate resort fee to guests paying with loyalty points." *Id.*, ¶ 30. Plaintiff claims that the portion of the resort fee that is above the cost of providing the amenities plus some profit, *which he assumes is at least equal to the flat-rate fee charged to guests using loyalty points*, constitutes an unfair and unjust enrichment. *Id.*, ¶ 32. As admitted in the Complaint, the flat-rate resort fee charged at the Courtyard if the guest is using loyalty points is $25 per day. *Id.*, ¶ 20. However, when Plaintiff stayed at the Courtyard on January 11 and 12, 2016 he "was charged a room rate of $125.00 and *a resort fee of $22.50* (18% of the room rate)." *Id.*, ¶ 28 (emphasis added). This means that because he was charged a percentage-based resort fee, Plaintiff ended up paying a resort fee that *was lower* than what the Complaint alleges Plaintiff should have been charged as a flat-rate. This plainly shows that Plaintiff suffered no correlative loss or impoverishment due to the fact that the Courtyard charges a percentage-based resort fee. Nor did he allege that he suffered such correlative loss.

Further, Puerto Rican courts have found that there must be a lack of a justification for the enrichment or the enrichment must be illegitimate in order for the claim to be supported. One of the considerations examined is whether a contractual relationship existed—as is the case here. In

other words, under Puerto Rico law "enrichment is not unjustified as long as there is an equivalent contractual obligation or title acquired by purchase or by gift, or is the result of a legal or natural obligation." *Ortiz Andujar v. ELA*, 22 P.R. Offic. Trans. 774, 786 (P.R. 1988) (emphasis added). *See also Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 280 (2nd Cir. 2013) ("The parties' relationship is contractual and, so long as the customer receives the benefit of the bargain sought in his bid, the profit generated by Priceline should be of no concern."); *Marshall v. Priceline.com Inc.*, 2010 WL 1068197, at \*4 (Del. Super. Ct. 2010) ("The contract simply required Priceline to disclose the fees associated with servicing the Plaintiffs' request. As long as the total amount was disclosed and the Plaintiffs were willing to proceed by indicating their acceptance of that amount, the contract terms have been met.").

Here, Plaintiff has failed to adequately allege a lack of justification premised on a percentage-based resort fee. He failed to allege that element of his claim because indeed there is a justification or cause for the enrichment in terms of the valid contract that was perfected for Plaintiff to stay at the Courtyard. Therefore, the claim is barred because the contractual relationship justifies the percentage-based resort fee.

**B.    The Dolo Claim Fails.**

*1.    The Elements for Dolo in the Formation Are Not Met.*

Under Puerto Rico's contract law, fraud that affects a contracting party is commonly referred to as dolo or deceit. *See Márquez v. Torres Campos*, 111 D.P.R. 854, 863-864 (1982), 11 P.R. Offic. Trans. 1085 (1982). Dolo can be manifested in one of two situations: (1) in the "formation" of a contract, or (2) in the "performance" of a contractual obligation. *See Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 378 (1st Cir. 2011) (quoting *Colón v. Promo Motor Imports, Inc.*, 144 D.P.R. 659, 668 (1997)); P.R. Laws Ann. tit. 31, §§ 3404-3409.

Dolo in the formation occurs "when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them he would not have made." P.R. Laws Ann. tit. 31, § 3408. On the other hand, dolo in the performance is the contractual deceit that arises not at the contracting stage, but rather during the course of the performance of the parties' obligations. *See Dialysis Access Ctr., LLC*, 638 F.3d at 378.

Dolo and fraud are not synonymous concepts, but this Circuit has interpreted dolo to be akin to fraud in the inducement. As such, the party alleging dolo in the formation of a contract must establish four elements: "(1) a false representation by the defendant; (2) the plaintiff's reasonable and foreseeable reliance thereon; (3) injury to the plaintiff as a result of the reliance; and (4) an intent to defraud." *Burk v. Paulen*, 100 F.Supp.3d 126, 134 (D.P.R. 2015) (Gelpí, U.S. Dist. Judge).

Plaintiff's dolo in the formation of the contract claim fails as a matter of law because Defendants adequately disclosed the existence and amount of the resort fee charge on the booking page that displayed the room options and prices for those rooms. Indeed, the factual allegations made by Plaintiff in support of his unjust enrichment claim establish that there was no false representation or material omission on the part of the Defendants. Although he does not allege through which of the Websites he booked his stay at the Courtyard, Plaintiff admits that "Defendants' own website states, 'Please note—Mandatory resort fee 18 percent will be added to rate.'" Compl. ¶ 22. That statement is clearly true. Likewise, the images pasted to the complaint show that the other Websites through which Plaintiff could have made his reservation plainly disclose, as a separate line item, that a resort fee would be added to the room rate. *Id.*, ¶¶ 23, 25, 26). Hence, the threshold element for Plaintiff to prevail in his dolo claim (*i.e.*, insidious machinations, false representations or omissions on the part of Defendants) is not met.

Plaintiff alleges that "Defendants charge these resort fees without disclosing the terms and conditions governing the resort fee, what amenities or services are covered by the resort fees, or whether the resort fee would be subject to any taxes." *Id.*, ¶ 1. This conclusory allegation is meritless and should be rejected for several reasons.

*First*, even if the terms and conditions governing the resort fees and the amenities or services covered were not disclosed, the fact that a resort fee was to be charged and the amount thereof was plainly disclosed prior to Plaintiff's booking. The Federal Trade Commission ("FTC"), which oversees online internet advertising for hotels, has found nothing deceptive about charging resort fees, as long as the fee is clearly disclosed and the resort fee is included in the total quoted price. Indeed, neither the FTC nor any court has concluded that a hotel engages in an unlawful practice when it discloses a resort fee without itemizing the services and amenities thereby covered. Hence, Plaintiff's dolo in the formation claim fails. *See Ford v. Hotwire, Inc.*, 2008 WL 5874305, at *4 (holding that no reasonable consumer would be deceived because "both the amount and mandatory nature of the resort fee at issue here is readily available public information disclosed on the hotel's own websites" and, thus, dismissing as implausible claim under California's False Advertising Law); *Marshall v. Priceline.com Inc.*, 2010 WL 1068197 at *4 ("As long as the total amount was disclosed and the Plaintiffs were willing to proceed by indicating their acceptance of that amount, the contract terms have been met.").

*Second*, Plaintiff's conclusory allegations are belied by the Websites. The Court "need not accept as true allegations that contradict the [complaint's] exhibits or documents incorporated by reference." *Soule v. Hilton Worldwide, Inc.*, 1 F.Supp.3d at 1087 n. 2 (citing *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)). Here, the printouts of the Websites show that the services and amenities covered by the fee are clearly disclosed to

customers interested in booking a room at the Courtyard. *See* Exhibits 1B, 2, 3, and 4B.[9] The complaint alleges that "Plaintiffs [sic] and the putative class members were unable to determine what services and amenities were covered by the resort fees" (Compl. ¶ 50), but the fact that Plaintiff allegedly was unable to determine the services and amenities covered by the resort fees does not mean that they were not in fact disclosed. Moreover, the terms and conditions of the Websites, including the terms and conditions governing Plaintiff's stay at the Courtyard, were just a click away and, thus, also plainly accessible to Plaintiff if he wanted to review all the details. *See* Exhibits 1-4. As such, Plaintiff's conclusory allegation regarding the alleged lack of disclosures should be rejected. *See Puerto Rico Power Auth. v. Action Refund*, 472 F.Supp.2d 133, 139 (D.P.R. 2006) ("Conclusions, conjectures, and suppositions or suspicions are not of themselves sufficient to substantiate an allegation of [dolo and/or] fraud."); *Freeman v. Priceline.com, Inc.*, 2013 WL 5946069 (Cal. App. 2nd Div. Nov. 7, 2013) (noting the terms and conditions available via hyperlinks and holding that, in view of the disclosures regarding the resort fees charged by hotels, there was no triable issue of fact showing that Priceline made a false or misleading representation or omission); *Wadsworth v. KSL Grand Wailea Resort, Inc.*, 2011 WL 6030074, at *7 (D. Haw. 2011) (denying summary judgment for plaintiffs under Hawaii Unfair and Deceptive Practices Act in service charge case; "it is unnecessary the disclosure appear on every document given to a purchaser").

---

[9] As mentioned, because Plaintiff included as part of his complaint screenshots of the various websites in which a customer may book a reservation at the Courtyard, the court may consider printouts thereof, including the portions of the websites the plaintiff conveniently chose to omit from the complaint in ruling on this motion, which are deemed incorporated to the complaint by reference. *See Ford v. Hotwire, Inc.*, 2007 WL 6235779, at *1; *Barnes v. Marriott Hotel Services, Inc.*, 2017 WL 635474, at *4. *See also Nieto-Vicenty v. Valledor*, 984 F. Supp. 2d 17, 20 (D.P.R. 2013) (considering insurance policy documents attached to defendant's motion to dismiss without converting the motion into one for summary judgment, because "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.").

*Third*, Plaintiff complains about the fact that the Defendants allegedly did not disclose whether the resort fee would be subject to any taxes. Compl. ¶ 1. As mentioned, Plaintiff does not even allege through which Website he booked a room at the Courtyard. Further, Defendants were under no obligation to disclose this fact given the basic tenet that everyone is charged with knowledge of the law. *See* P.R. Laws Ann. tit. 31, § 2. *See also Atkins v. Parker*, 472 U.S. 115, 130 (1985) ("All citizens are presumptively charged with knowledge of the law."); *Hawley v. Diller*, 178 U.S. 476, 486 (1900) ("The purchaser is chargeable with knowledge of the law, which includes knowledge of this law, and is chargeable with knowledge of the state of the title which he buys."). In Puerto Rico, the obligation of all businesses to collect sales tax over all goods and services, including obviously the resort fee, is mandated by the Puerto Rico tax code. *See* §§ 4010.001(aa), (gg), (nn), 4020.01, 4020.05, 4210.01 and 6080.14 of Act 1-2011, as amended. Plaintiff, like every U.S. citizen, is charged with knowledge of such obligation and, thus, there was no misrepresentation or omission on the part of Defendants by failing to disclose the same. *See, e.g.*, *Dzuira v. U.S.*, 168 F.3d 581 (1st Cir. 1999) ("the taxpayers—like the IRS itself—were chargeable with knowledge of the law, and thus with knowledge that the IRS had a duty to return the unsold painting promptly"); *Sanders-Midwest, Inc. v. U.S.*, 15 Cl. Ct. 345, 348-350 (1988) (dismissing misrepresentation claim that contract allegedly did not clearly disclose the project would be subject to sales tax and other local taxes, holding, inter alia, that "[p]ersons are charged with knowledge of the law").[10]

---

[10] Moreover, in order for a valid and enforceable contract to exist under Puerto Rico law "it is not necessary for an offer to specify every detail, if such details can be ascertained from other sources, and the parties were clear about them." *Citibank Global Markets, Inc. v. Rodriguez Santana*, 573 F.3d 17, 25 (1st Cir. 2009). Here, the calculations of all applicable charges—including the amount that would be charged as resort fee and the services and amenities covered by the resort fee—were disclosed before the Plaintiff agreed to stay at the Courtyard, and said calculations served the purpose of ensuring that the offer was definite. *Id.* at 25-26. As such, Plaintiff is bound by the terms of his contract with the Courtyard and all consequences stemming from said agreement. *See R&T Roofing Contractor, Corp. v. Fusco Corp.*, 265 F.Supp.3d 145, 155 (D.P.R. 2017) ("When parties enter a valid and enforceable contract,

*Fourth*, although Plaintiff generally alleges that "Defendants' [sic] intentionally concealed the terms and conditions governing the resort fees" (Compl., ¶ 52), he does not allege by which Website was he supposedly deceived and does not even allege that he read the applicable terms and conditions. Blanket assertions of misrepresentations do not suffice to establish dolo in the formation. *See Somascan, Inc. v. Philips Med. Sys. Nederland B.V.*, 2012 WL 12893025, at *9 (D.P.R. 2012). When a court rules on a 12(b)(6) motion, plaintiffs "are entitled to all inferences which are fairly supported by the evidence, but are not permitted to build their case on mere opprobrious epithets of malice or the gossamer threads of whimsy, speculation and conjecture." *Id.* (citing *Macone v. Town of Wakefield*, 277 F.3d 1, 5 (1st Cir. 2002)). Regardless of the Website used by Plaintiff, the fact is that the terms and conditions governing his stay at the Courtyard, as well as the terms of use of the Websites, were accessible via hyperlinks so that Plaintiff could have reviewed all the details if he wanted to. *See* Exhibits 1-4. Simply put, Plaintiff has not established Defendants intended to defraud anyone, when they explicitly and conspicuously disclosed the resort fees and the specific amount to be charged in a separate line item in the Websites. As such, Plaintiff's dolo claim cannot survive. *See Raytheon-Catalytic, Inc. v. Gulf Chem. Corp.*, 959 F. Supp. 100, 109 (D.P.R. 1997) ("In order to prove deceit, the intentional fault or bad faith of the person charged must be established, inasmuch as good faith is always presumed."); *Burk v. Paulen*, 100 F.Supp.3d, at 135.

*Fifth*, dolo requires Plaintiff to establish that he suffered an injury as a result of his reliance. *Id.* at 134. Yet, Plaintiff's own allegations establish that he suffered no injury as a consequence of the percentage-based resort fee. As mentioned, Plaintiff claims that the portion

---

the parties are bound by the contract's terms and consequences of their agreement."). *See also Marshall v. Priceline.com Inc.*, 2010 WL 1068197, at *4 ("The contract simply required Priceline to disclose the fees associated with servicing the Plaintiffs' request. As long as the total amount was disclosed and the Plaintiffs were willing to proceed by indicating their acceptance of that amount, the contract terms have been met.").

of the resort fee that is above the cost of providing the amenities plus some profit, *which he assumes is at least equal to the flat-rate fee charged to guests using loyalty points* ($25), constitutes an unfair and unjust enrichment. Compl., ¶ 32. However, he was charged and paid $22.50 as resort fee for his stay at the Courtyard. *Id.*, ¶ 28. In other words, because he was charged a percentage-based resort fee, Plaintiff ended up paying a resort fee which was *lower* than the amount the Complaint alleges Plaintiff should have been charged as a flat-rate. Having suffered no injury as a result of the percentage-based resort fee charged by the Courtyard, Plaintiff's claim for dolo/fraud in the formation must be dismissed. *See Ames v. Caesars Enter. Corp.*, 2019 WL 1441613, at *4 (D. NV. 2019) (holding that "damages are a necessary element of fraudulent concealment" and dismissing claim that failed to allege that during Plaintiffs' stay they were denied access to the disclosed amenities, sufficient access to those amenities, or that the amenities were otherwise unsatisfactory.).

2.  *Plaintiff Has Not Pled a Plausible Claim of Dolo that Meets the Heightened Pleading Standard of 9(b).*

The Supreme Court has repeatedly emphasized that to pass muster, a complaint must make out a plausible entitlement to relief that goes "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). For that to occur, a plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See González v. B.B.P.R.*, 318 F. Sup.3d 461, 471 (D.P.R. 2018). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.Pro. 8(a)(2)).

"For purpose of notice pleading, it is clear that dolo is analogous to fraud in that it refers to specific acts of similar nature. Therefore, it must be pleaded in detail." *Fournier v. E. Airlines, Inc.*, 655 F. Supp. 1037, 1039 (D.P.R. 1987). Here, Plaintiff is asserting a claim for fraud in the formation of a contract (dolo). As such, the complaint is subject to the heightened pleading standard of Rule 9(b). Plaintiff's dolo in the formation does not pass muster under the plausibility standard, let alone the heightened pleading standard for dolo claims involving fraud.[11] As such, dismissal is warranted.

Plaintiff purports to assert a claim for fraud/dolo in the formation of the contract. Compl. ¶¶ 48-53. Yet, Plaintiff failed to plead through which Website he booked his reservation, which Website's terms and conditions he relied on, which statements were false or misrepresented, and which of the Defendants actually made the alleged false representations or omissions. Plaintiff does not even allege that the resort fee factored into his decision to book the hotel room at issue, that he was confused by the disclosed charges, how he interpreted the resort fees charge, or whether the charge would have made a difference in his decision to book the hotel room at the time of booking. Plaintiff's dolo in the formation of the contract is just implausible given his failure to plead such basic information. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged. A plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.") (internal citations and quotation marks omitted). *See also*

---

[11] Like fraud, dolo is not presumed. Thus, the party alleging "dolo" bears the burden of proof. *See Canales v. Pan American*, 112 P.R. Dec. 329, 340 (1982), 12 P.R. Offic. Trans. 411, 426 (1982). In order "[t]o prove 'dolo,' the intentional fault or bad faith of the person charged must be established, inasmuch as good faith is always presumed." *Citibank v. Dependable*, 121 P.R. Dec. 503, 519 (1987), 21 P.R. Offic. Trans. 496, 512 (1987) (citations omitted); *Citibank Global Markets, Inc. v. Rodriguez Santana*, 573 F.3d 17, 29 (1st Cir. 2009).

*Westernbank Puerto Rico v. Kachkar*, 2009 WL 6337949, at * 18 (D.P.R. 2009) (recommending dismissal of fraud in the inducement claim for failure to adequately plead *scienter*, holding "[t]he courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading") (Report and Recommendation adopted at 2010 WL 1416521).

Plaintiff failed to plead, let alone plead with any particularity, how he was injured by relying on the truthful disclosure that a "'Mandatory resort fee 18 percent will be added to rate,'" (Docket 32 ¶ 22) when, in fact he was charged the referenced disclosed fee. Plaintiff also failed to allege what injury he actually suffered by the fact that he was charged the agreed-upon percentage-based resort fee which, admittedly, was explicitly and conspicuously disclosed when he made his reservation.[12] Moreover, Plaintiff could not have suffered an injury given that he paid a resort fee that was *lower* than the amount the Complaint alleges Plaintiff should have been charged as a flat-rate. Having failed to allege the basic elements of the cause of action, Plaintiff has not pled a plausible dolo in the formation claim that can survive a motion to dismiss. *See Ford v. Hotwire, Inc.*, 2008 WL 5874305, at *4 (dismissing as implausible claim under California's False Advertising Law[13] based on allegedly concealed fact that users of website might have to pay resort fees where the website plainly disclosed the fee). *See also*, *Wilson v. Stratosphere Corp.*, 371 Fed. Appx. at 811 (rejecting argument that hotel misled plaintiffs "by

---

[12] Nor did Plaintiff allege how he could be damaged by a percentage-based resort fee that was explicitly disclosed and quoted for his stay.

[13] Under California's False Advertising Law, it is unlawful for an individual or entity to make any "untrue or misleading" statement to induce the public to purchase goods or services. *See* Cal. Bus. & Prof. § 17500. California's False Advertising Law prohibits statements made in such a way "that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *See Lavie v. Procter & Gamble Co.,* 105 Cal.App.4th 496, 508, 129 Cal.Rptr.2d 486 (2003). Thus, it is somewhat akin to a dolo claim.

charging a resort fee separate from the room rate, irrespective of whether the fee was disclosed or not" because plaintiffs "offer[ed] no case law to support their argument that the mere act of charging fees separate from a room rate violates [Nevada's consumer fraud statute]").

Plaintiff alleges that "[o]n information and belief, Plaintiffs [sic] and the putative class members were charged on multiple occasions for a single service and/or amenity." Compl., ¶ 51. However, in this Circuit "plaintiffs who bring their claims on information and belief to 'set forth the source of the information and the reasons for the belief.'" *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999) (citations omitted). Plaintiff's allegation is also nonsensical because if, as alleged, "Plaintiffs [sic] and the putative class members were unable to determine what services and amenities were covered by the resort fees" (Compl., ¶ 50), Plaintiff could not claim that he and the class members were charged on multiple occasions for the same service and/or amenity.

Moreover, Plaintiff generically alleges that "Defendants' [sic] intentionally concealed the terms and conditions governing the resort fees." (Compl., ¶ 52). Yet, the Complaint fails to specify what misconduct is particularly attributed to codefendant IHA and what misconduct is attributable to Marriott. A "Plaintiff cannot simply group all Defendants together and allege, generally, that they violated his rights. Such statements do not meet the pleading requirements." *Doop v. Woodford*, 2015 WL 2345314, at *2 (E.D. Cal. May 14, 2015) (citing *Iqbal*, 556 U.S. at 678). "[T]he "circumstances" required to be pled with particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). It being devoid of any particularity concerning Marriott's

conduct separate and apart from IHA, Plaintiff's complaint simply does not state a plausible claim for relief against Marriott and, hence, must be dismissed.

In sum, given all the deficiencies in Plaintiff's dolo in the formation of the contact claim, that cause of action must be dismissed. Likewise, given the existence of a valid contract between Plaintiff and the Courtyard, his unjust enrichment claim fails. Accordingly, the complaint should be dismissed in its entirety.

WHEREFORE, Marriott respectfully requests that the Court dismiss the captioned complaint, with prejudice, with the assessment of costs and attorney fees and any such other relief as this Court deems proper.

RESPECTFULLY SUBMITTED.

I HEREBY CERTIFY that, on this same date, we filed this Notice with the Clerk of the Court using the CM/ECF system, which will send notification electronically to all counsel of record.

In San Juan, Puerto Rico this 20th day of January, 2020.

s/Leslie Y. Flores-Rodriguez
Leslie Y. Flores-Rodriguez
USDC-PR No. 223601
lfr@mcvpr.com

MCCONNELL VALDÉS LLC
P.O. Box 364225
San Juan, PR  00936-4225
270 Muñoz Rivera Ave., 9th Floor
San Juan, PR  00918
Tel.:  (787) 250-5628
Fax:  (787) 759-8282

Attorneys for International Hospitality
Management, Inc.